**ARNOLD & PORTER LLP**
KENNETH L. CHERNOF (SBN 156187)
RONALD D. LEE (SBN 156025)
555 Twelfth Street NW
Washington, DC 20004-1206
Telephone: 202.942.5000
Facsimile: 202.942.5999
E-Mail: ken.chernof@aporter.com
E-Mail: ronald.lee@aporter.com

TRACY T. LANE (SBN 184666)
RACHEL L. CHANIN (SBN 229253)
Three Embarcadero Center, 10th Floor
San Francisco, California  94111
Telephone:  415.471.3100
Facsimile:  415.471.3400
E-Mail: tracy.lane@aporter.com
E-Mail: rachel.chanin@aporter.com

*Attorneys for Defendant Adobe Systems Incorporated*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| *In re Adobe Systems Inc. Privacy Litigation* | Lead Case No.: 5:13-CV-05226-LHK |
| | [Consolidated with Case Nos. 13-cv-05596-LHK, 13-cv-05611-LHK, 13-cv-05930-LHK, 14-cv-00014-LHK, 14-cv-00030-LHK, and 14-cv-00157-LHK] |
| | **NOTICE OF MOTION AND MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT ADOBE SYSTEMS INCORPORATED'S MOTION TO DISMISS AMENDED CONSOLIDATED COMPLAINT** |
| | Hearing Date:  August 21, 2014<br>Time:  1:30 pm<br>Place:  Courtroom 8, 4th Floor<br>Judge:  Honorable Lucy H.  Koh<br>Action Filed:  April 4, 2014 |

1

## NOTICE OF MOTION AND MOTION TO DISMISS

2

TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:

3

PLEASE TAKE NOTICE THAT on August 21, 2014 at 1:30 p.m., in Courtroom 8, 4th

4   Floor of this Court, located at 280 South 1st Street, San Jose, CA 95113, Defendant Adobe Systems

5   Incorporated will and hereby does move this Court to dismiss the Consolidated Amended

6   Complaint filed on April 4, 2014 pursuant to Rule 12(b)(1) and 12(b)(6) of the Federal Rules of

7   Civil Procedure.

8   Specifically, Adobe seeks an order dismissing the Complaint without leave to amend

9   because no Plaintiff has suffered a legally cognizable injury attributable to Adobe's conduct and

10   thus each Plaintiff lacks standing to assert any claim for relief.  Moreover, Plaintiffs fail to state

11   claims for relief under the California Data Breach Notification Act and California's Unfair

12   Competition Law.  This motion is based on this Notice of Motion and Motion, the attached

13   Memorandum of Points and Authorities, the accompanying Request for Judicial Notice, the

14   pleadings and papers on file herein, and such other matters as may be presented to the Court at the

15   time of the hearing.

16

17   Dated:  May 21, 2014                          ARNOLD & PORTER LLP

18

19

20                                         By:    /s/ Kenneth L. Chernof
                                                  Kenneth L. Chernof (SBN 156187)
21                                                Ronald D. Lee (SBN 156025)
                                                  Tracy T. Lane (SBN 184666)
22                                                Rachel L. Chanin (SBN 229253)
                                                  *Attorneys for Defendant Adobe Systems*
23                                                *Incorporated*

24

25

26

27

28

NOTICE OF MOTION AND MOTION AND MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
AMENDED CONSOLIDATED COMPLAINT, CASE NO. 5:13-CV-05226-LHK

# TABLE OF CONTENTS

Page

INTRODUCTION ..................................................................................................... 1

STATEMENT OF THE ISSUES TO BE DECIDED ................................................. 3

FACTUAL BACKGROUND ..................................................................................... 3

LEGAL STANDARDS ............................................................................................... 4

ARGUMENT ............................................................................................................... 6

I.  THE CALIFORNIA DATA BREACH NOTIFICATION ACT CLAIM (COUNT I) SHOULD BE DISMISSED FOR LACK OF STANDING AND FAILURE TO STATE A CLAIM PURSUANT TO FED. R. CIV. P. 12(B)(1) AND (6). ........................... 6

II. PLAINTIFFS' DECLARATORY RELIEF CLAIM (COUNT II) SHOULD BE DISMISSED AS A NON-JUSTICIABLE ATTEMPT TO OBTAIN A BREACH OF CONTRACT REMEDY WITHOUT PROVING A BREACH OF CONTRACT. .............................................................................................. 12

    A. Plaintiffs Lack Standing To Seek Declaratory Relief Because They Fail To Allege Injury-In-Fact Fairly Traceable to Adobe's Challenged Conduct, and the Claim Should Therefore Be Dismissed Pursuant to Fed. R. Civ. P. 12(b)(1). ............................................................................. 13

    B. Plaintiffs' Claim Is Not Ripe and Seeks an Impermissible Advisory Opinion, and Should Therefore Be Dismissed Pursuant to Fed. R. Civ. P. 12(b)(1). ............................................................................. 13

    C. Plaintiffs Cannot Disguise an Inadequate Breach of Contract Claim as a Claim for Declaratory Relief, and the Claim Should Therefore Be Dismissed Pursuant to Fed. R. Civ. P. 12(b)(6). ........................................ 15

III. PLAINTIFFS' UCL CLAIM FOR INJUNCTIVE RELIEF (COUNT III) SHOULD BE DISMISSED FOR LACK OF STANDING AND FAILURE TO STATE A CLAIM FOR RELIEF. ................................................................. 16

    A. Plaintiffs Lack Article III and Statutory Standing Under the UCL Because They Fail To Allege Injury-In-Fact Fairly Traceable to Adobe's Challenged Conduct, and the Claim Should Be Dismissed Pursuant to Fed. R. Civ. P. 12(b)(1) and (6). ........................................ 16

    B. Plaintiffs Cannot Seek Specific Performance Under the UCL on Their Adobe Contracts When They Have No Breach of Contract Claim, and the Claim Should Therefore Be Dismissed Pursuant to Fed. R. Civ. P. 12(b)(6). ................................................................................................. 17

    C. Plaintiffs Fail To Plead Any Violation of Law that Could Serve as a Basis for a Claim Under the UCL's "Unlawful" Prong, and the Claim Should Therefore Be Dismissed Pursuant to Fed. R. Civ. P. 12(b)(6). .................. 18

i

D.     Plaintiffs Fail to Plead Any Conduct That Could Serve as a Basis For a Claim Under the UCL's "Unfair" Prong, and the Claim Should Therefore Be Dismissed Pursuant to Fed. R. Civ. P. 12(b)(6). ............................... 19

IV.     PLAINTIFFS' CLAIM FOR RESTITUTION UNDER THE UCL SHOULD BE DISMISSED FOR LACK OF STANDING AND FAILURE TO STATE A CLAIM FOR RELIEF PURSUANT TO FED. R. CIV. P. 12(B)(1) AND (6). ................... 19

A.     Halpain and McGlynn Lack Standing To Sue over ColdFusion ............................. 20

B.     Plaintiffs Fail To State a Claim Under the "Fraudulent" Prong of the UCL ............ 20

1.     Plaintiffs Fail To Allege a Duty To Disclose the Alleged Omission ............ 21

2.     Plaintiffs Do Not Allege Actionable Reliance on the Alleged Omissions. ................................................................................... 23

C.     Halpain and McGlynn Fail To State an "Unfair" Claim Under the UCL. ................. 25

CONCLUSION ......................................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Allison v. Aetna, Inc.*,
   No. 09-2560, 2010 WL 3719243 (E.D. Pa. Mar. 9, 2010).......................................... 11

*Amburgy v. Express Scripts, Inc.*,
   671 F. Supp. 2d 1046 (E.D. Mo. 2009)....................................................................... 11

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ....................................................................................................... 5

*Bardin v. Daimlerchrysler Corp.*,
   136 Cal. App. 4th 1255 (2006)..................................................................................... 19

*Bates v. United Parcel Serv., Inc.*,
   511 F.3d 974 (9th Cir. 2007)................................................................................... 5, 17

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)........................................................................................... 5, 19, 25

*Bisson v. Bank of Am., N.A.*,
   919 F. Supp. 2d 1130 (W.D. Wash. 2013) .................................................................. 14

*Boorstein v. CBS Interactive, Inc.*,
   222 Cal. App. 4th 456 (2013)..................................................................................... 6, 7

*Calderon v. Ashmus*,
   523 U.S. 740 (1998) ..................................................................................................... 14

*Chau v. Neiman Marcus Group Ltd., Inc.*,
   No. 14-00597 (S.D. Cal. filed Mar. 14, 2014) ........................................................... 9

*City of Los Angeles v. Lyons*,
   461 U.S. 95 (1983)......................................................................................................... 7

*Clapper v. Amnesty Int'l USA*,
   --- U.S. ---, 133 S. Ct. 1138 (2013)................................................................... *passim*

*Colonial Life & Acc. Ins. Co. v. Stentorians-L.A. Cnty. Black Fire Fighters*,
   No. 2:13-CV-9235-CAS, 2014 WL 794571 (C.D. Cal. Feb. 24, 2014) ................. 17

*Drum v. San Fernando Valley Bar Ass'n*,
   182 Cal. App. 4th 247 (2010)...................................................................................... 19

*Edwards v. First Am. Corp.*,
   610 F.3d 514 (9th Cir. 2010)......................................................................................... 7

*Elias v. Hewlett-Packard Co.*,
    950 F. Supp. 2d 1123 (N.D. Cal. 2013) (Koh, J.) ............................................................ 21, 22

*Falk v. Gen. Motors Corp.*,
    496 F. Supp. 2d 1088 (N.D. Cal. 2007) ............................................................................ 21

*Forever 21, Inc. v. Nat'l Stores Inc.*,
    2:12-CV-10807-ODW, 2014 WL 722030 (C.D. Cal. Feb. 24, 2014).................................. 17

*Galaria v. Nationwide Mut Ins. Co.*,
    --- F. Supp. 2d ---, 2014 WL 689703 (S.D. Ohio Feb. 10, 2014) ..................................... 8, 10

*Gamble v. GMAC Mortgage Corp.*,
    No. C-08-05532 RMW, 2009 WL 400359 (N.D. Cal. Feb. 18, 2009) ................................. 15

*Gest v. Bradbury*,
    443 F.3d 1177 (9th Cir. 2006)........................................................................................ 13

*Granfield v. NVIDIA Corp.*,
    No. C 11-05403 JW, 2012 WL 2847575 (N.D. Cal. July 11, 2012)................................... 20

*Gray v. Toyota Motor Sales, U.S.A.*,
    No. CV-08-1690 PSG, 2012 WL 313703 (C.D. Cal. Jan. 23, 2012).................................... 21

*Guidiville Rancheria of Cal. v. United States*,
    --- F. Supp. 2d ---, 2013 WL 6512788 (N.D. Cal. Dec. 12, 2013)....................................... 17

*Hammond v. The Bank of New York Mellon Corp.*,
    No. 08 Civ. 6060, 2010 WL 2643307 (S.D.N.Y. June 25, 2010)...................................... 9, 11

*Haskins v. Symantec Corp.*,
    Case No. 13-cv-01834-JST, 2013 WL 6234610 (N.D. Cal. Dec. 2, 2013) ..................... 12, 18

*Herron v. Best Buy Co.*,
    924 F. Supp. 2d 1161 (E.D. Cal. 2013)........................................................................ 21, 22

*Hodges v. Apple, Inc.*,
    No. 13-cv-01128-WHO, 2013 WL 4393545 (N.D. Cal. Aug. 12, 2013) ............................. 25

*Household Fin. Servs., Inc. v. N. Trade Mortg. Corp.*,
    No. 99 C 2840, 1999 WL 782072 (N.D. Ill. Sept. 27, 1999).................................................. 15

*In re Barnes & Noble Pin Pad Litig.*,
    No. 12-cv-8617, 2013 WL 4759588 (N.D. Ill. Sept. 3, 2013) ......................................... 8, 10

*In re Facebook PPC Adver. Litig.*,
    No. 5:09-CV-03043-JF, 2010 WL 3341062 (N.D. Cal. Aug. 25, 2010) ............................. 23

*In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*,
    834 F. Supp. 2d 566 (S.D. Tex. 2011) *rev'd in part on other grounds sub nom. Lone Star Nat. Bank, N.A. v. Heartland Payment Sys., Inc.*, 729 F.3d 421 (5th Cir. 2013).................. 23

iv

*In re iPhone Application Litig.*,
--- F. Supp. ---, 2013 WL 6212591 (N.D. Cal. Nov. 25, 2013) .......................................... 5, 23

*In re Linkedin User Privacy Litig.*,
Case No. 5:12-CV-03088-EJD, 2014 WL 1323713 (N.D. Cal. Mar. 28, 2014).................... 23

*In re Sci. Applications Int'l Corp. Backup Tape Data Theft Litig.*,
--- F. Supp. 2d ---, 2014 WL 1858458 (D.D.C. May 9, 2014).........................................*passim*

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*,
903 F. Supp. 2d 942 (S.D. Cal. 2012) ..................................................................................... 3

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*,
--- F. Supp. 2d ---, 2014 WL 223677 (S.D. Cal. Jan. 21, 2014) ........................................ 7, 10

*In re Target Corp. Customer Data Sec. Breach Litig.*,
--- F. Supp. 2d ---, 2014 WL 1338473 (J.P.M.L. Apr. 2, 2014) ............................................ 9

*Johns v. Bayer Corp.*,
No. 09CV1935 DMS, 2010 WL 476688 (S.D. Cal. Feb. 9, 2010) ........................................ 20

*Key v. DSW, Inc.*,
454 F. Supp. 2d 684 (S.D. Ohio 2006)................................................................................... 12

*Krottner v. Starbucks Corp.*,
628 F.3d 1139 (9th Cir. 2010)................................................................................................ 11

*Mayfield v. United States*,
599 F.3d 964 (9th Cir. 2010).................................................................................................. 13

*Maytag Corp. v. Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am.*,
687 F.3d 1076 (8th Cir. 2012)................................................................................................ 14

*Miller v. Ghirardelli Chocolate Co.*,
912 F. Supp. 2d 861 (N.D. Cal. 2012) ................................................................................... 20

*Moyer v. Michaels Stores Inc.*,
No. 14-00561 (N.D. Ill. filed Jan. 27, 2014)........................................................................... 9

*Noll v. eBay, Inc.*,
No. 5:11-CV-04585-EJD, 2013 WL 2384250 (N.D. Cal. May 30, 2013)............................. 24

*Opperman v. Path, Inc.*,
No. 13-453, 2014 U.S. Dist. LEXIS 67225 (N.D. Cal. May 14, 2014) ....................... 7, 21, 22

*Pisciotta v. Old National Bancorp*,
499 F.3d 629 (7th Cir. 2007).................................................................................................. 11

*Polanco v. Omnicell, Inc.*,
--- F. Supp. 2d ---, 2013 WL 6823265 (D.N.J. Dec. 26, 2013)........................................ 8, 10

v

*Principal Life Ins. Co. v. Robinson*,
   394 F.3d 665 (9th Cir. 2005) ................................................................. 5, 14

*Reilly v. Ceridian Corp.*,
   664 F.3d 38 (3d Cir. 2011) ....................................................................... 11

*Rubio v. Capital One Bank*,
   613 F.3d 1195 (9th Cir. 2010) ................................................................... 5

*Ruiz v. Gap, Inc.*,
   540 F. Supp. 2d 1121 (N.D. Cal. 2008), *aff'd*, 380 F. App'x 689 (9th Cir. 2010) ................ 16

*Ruiz v. Gap, Inc.*,
   622 F. Supp. 2d 908 (N.D. Cal. 2009), *aff'd*, 380 F. App'x 689 (9th Cir. 2010) .................. 12

*Stollenwerk v. Tri-W. Health Care Alliance*,
   254 F. App'x 664 (9th Cir. 2007) ............................................................... 9

*Strautins v. Trustwave Holdings, Inc.*,
   --- F. Supp. 2d ---, 2014 WL 960816 (N.D. Ill. Mar. 12, 2014) ......................... 8, 10

*Sybersound Records, Inc. v. UAV Corp.*,
   517 F.3d 1137 (9th Cir. 2008) ............................................................. 17, 19

*Thomas v. Sprint Solutions, Inc.*,
   No. C08-5119, 2010 WL 1263189 (N.D. Cal. Mar. 30, 2010) ............................... 23

*Veoh Networks, Inc. v. UMG Recordings, Inc.*,
   522 F. Supp. 2d 1265 (S.D. Cal. 2007) ...................................................... 14

*Wilson v. Hewlett-Packard Co.*,
   668 F. 3d 1136 (9th Cir. 2012) ............................................................... 22

*Yunker v. Pandora Media, Inc.*,
   No. 11-CV-03113 JSW, 2013 WL 1282980 (N.D. Cal. Mar. 26, 2013) .............................. 11

STATUTES

Cal. Bus. & Prof. Code § 22575(a) ............................................................... 18

Cal. Bus. & Prof. Code §§ 22575–79 .............................................................. 18

Cal. Civ. Code §§ 1798–1798.78 .................................................................. 18

Cal. Civ. Code § 1798.81.5(b) ................................................................. 6, 18

Cal. Civ. Code § 1798.82 ..................................................................... 6, 18

Cal. Civ. Code § 1798.82(a) ..................................................................... 6

Cal. Civ. Code § 1798.82(g) ..................................................................... 6

vi

Cal. Civ. Code § 1798.84(e) ..................................................................................................... 6, 12

**OTHER AUTHORITIES**

Federal Rule of Civil Procedure 12(b)(1) .................................................................................. 4, 5

Federal Rule of Civil Procedure 12(b)(6) .................................................................................. 4, 5

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

Plaintiffs are consumers of various Adobe products or services.  They brought seven putative class action lawsuits arising out of an incident in which a hacker attempted to invade Adobe's network (the "Incident").  None, however, alleged that they suffered any cognizable injury from the Incident.  At the Initial Conference, Plaintiffs' counsel expressed a hope that Plaintiffs would remedy this fatal defect in the Consolidated Complaint, noting that "I believe there's been an injury, your honor, and I believe we're going to have clients who will step forward who at least believe that there have been attempts to access their private data."  But he also conceded that "we hit stumbling blocks oftentimes when it comes to harm and damages."[1]  In the Consolidated Complaint ("Complaint" or "Compl."), however, no one has stepped forward with the promised allegations of harm.

A few key points frame this motion:

(1)     Plaintiffs do not allege that their data has in fact been used to their detriment, or that they suffered any cognizable injury, as a result of the Incident.

(2)     Plaintiffs have abandoned their claims for damages.

(3)     Plaintiffs have abandoned their claims for negligence.

(4)     Plaintiffs have abandoned their claims for breach of contract.

(5)     Plaintiffs have abandoned their affirmative misrepresentation claims.

(6)     Plaintiffs all allege that they agreed to the Privacy Policy, including its term:

> We provide reasonable administrative, physical and technical security control to protect your information.  However, despite our efforts, no security controls are 100% effective and Adobe cannot ensure or warrant the security of your personal information.[2]

---

[1] Request for Judicial Notice ("RJN"), Ex. A (Mar 13, 2014 Hr'g Tr.) at 12, 27; *see also* Jt. Case Mgmt. Conf. Stmt. ("CMC Statement"), ECF No. 33 at 5–6.

[2] RJN, Ex. B at 4; Ex. C at 3 (Adobe Privacy Policy).  Although Plaintiffs do not allege which version of the Privacy Policy they agreed to, for the sake of completeness, Adobe's RJN includes both the current version of the Privacy Policy (effective December 20, 2013) and the prior version (effective at the time of the Incident).

Plaintiffs now bring four claims through which they seek injunctive relief to enhance Adobe's security, declaratory relief to make it easier for individuals other than themselves to bring breach of contract claims, and restitution for customers who may decide that they would "rather switch" to other products. Plaintiffs' claims should be dismissed for multiple reasons:

Plaintiffs lack standing to seek injunctive or declaratory relief in Counts I, II and III to prevent hypothetical *future* breaches or to remedy speculative *future* injuries because they have not suffered any cognizable injury from the violations of law they have alleged.

Having abandoned their claims for breach of contract, Plaintiffs cannot seek breach of contract remedies in Counts II and III. Thus, they request a declaration "that Adobe's existing security measures do not comply with its contractual obligations" so that *other* users who *in the future* might suffer some injury "will not have to individually re-litigate the technical issue of Adobe's security obligations." But that is merely a request for an advisory opinion. And to the extent they seek injunctive relief for Adobe's alleged "fail[ure] to honor the terms of its contracts," they are impermissibly seeking specific performance and attempting to re-write those contracts.

Plaintiffs cannot seek restitution in Count IV based on their claim that Adobe failed to disclose that their data was vulnerable to attack because they cannot prove either any omissions that Adobe had a duty to disclose or any actionable reliance by Plaintiffs on the alleged omissions. Indeed, Plaintiffs allege that, even with full knowledge of the alleged omissions, they declined the opportunity to switch to other products, and even re-subscribed to the same product.

For these and other reasons discussed below, each of the four claims should be dismissed. Adobe acknowledges that Plaintiffs may be unhappy that a hacker attacked Adobe's network, as are so many other people who are customers of companies whose computers are hacked. But as the District Court for the District of Columbia recently held:

> [It] is, no doubt, cold comfort to [data breach victims] who must wait and watch their credit reports until something untoward occurs. After all, it is reasonable to fear the worst in the wake of such a theft, and it is understandably frustrating to know that the safety of your most personal information could be in danger. The Supreme Court, however, has held that an "objectively reasonable likelihood" of harm is not enough to create standing, even if it is enough to engender some anxiety. . . . Plaintiffs thus do not have standing based on risk alone, even if their fears are rational.

*In re Sci. Applications Int'l Corp. Backup Tape Data Theft Litig.*, --- F. Supp. 2d ---, 2014 WL 1858458, at *7 (D.D.C. May 9, 2014) ("*SAIC*") (citation omitted).

### STATEMENT OF THE ISSUES TO BE DECIDED

1. Should Plaintiffs' claim under the California Data Breach Notification Act (Count I) be dismissed for lack of standing and failure to state a claim for relief?

2. Should Plaintiffs' claim for declaratory relief (Count II) be dismissed for lack of standing and justiciability, and failure to state a claim for relief?

3. Should Plaintiffs' claim for violations of the "unlawful" and "unfair" prongs of California's Unfair Competition Law ("UCL") (Count III) be dismissed for lack of standing and failure to state a claim for relief?

4. Should Plaintiffs' claim for violation of the UCL for restitution (Count IV) be dismissed for lack of standing and for failure to state a claim for relief?

### FACTUAL BACKGROUND

Adobe develops, markets, and supports various printing, publishing, multimedia, and graphics software products. (Compl. ¶ 17.) Adobe's software is installed on hundreds of millions of computers worldwide. (*Id.* ¶ 1.) Consumers commonly use Adobe's free Adobe Reader and free Flash Player on their computers or smart phones to view documents, videos or other graphic Internet content. (*Id.* ¶ 18.) Consumers' use of Adobe software products—whether they are for free, paid for with a one-time fee, or paid for periodically via term subscriptions—is governed by End-User License Agreements (EULAs), and the use of the Adobe website and services is governed by Adobe's General Terms of Use. (*Id.* ¶ 29.) Adobe's Terms of Use incorporates Adobe's Privacy Policy by reference. (*Id.* ¶ 31.) Adobe's Privacy Policy provides that while it uses "reasonable administrative, technical, and physical security controls," "*no security controls are 100% effective*" and therefore "*Adobe cannot ensure the security of [its users'] personal information*."[3] (emphasis added). All Plaintiffs agreed to these terms. (*See id.* ¶¶ 29–32, 74–99.)

---

[3] As discussed in the accompanying RJN, the Court may take judicial notice of the complete Privacy Policy because the complaint relies on the it and its authenticity is unquestioned. *See, e.g.*, *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 903 F. Supp. 2d 942, 954–55

(Footnote Cont'd on Following Page)

NOTICE OF MOTION AND MOTION AND MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
AMENDED CONSOLIDATED COMPLAINT, CASE NO. 5:13-CV-05226-LHK

1    In September 2013, Adobe discovered an attack on its network involving the attempted

2    illegal access of customer information as well as source code for some Adobe products.  (*Id.* ¶ 49.)

3    Within three weeks of learning of the attack, and after investigating what information might have

4    been impacted, Adobe publicly disclosed that it had been the target of a data breach on October 3,

5    2013.  (*Id.* ¶ 50.)  Adobe sent emails advising potentially impacted users to reset their Adobe login

6    credentials (*Id.* ¶ 54), and sent letters offering a year of free credit monitoring (*Id.* ¶ 56).

7    Beginning in November 2013, Plaintiffs filed seven class action lawsuits against Adobe.

8    Nine putative class representatives asserted fourteen causes of action, including claims for breach of

9    contract, negligence, and misrepresentation.  In the Consolidated Complaint, six Plaintiffs now

10   allege four claims on behalf of three putative classes.  Four Plaintiffs—Duke, Kar, Halpain, and

11   McGlynn (the "California Plaintiffs")—purport to represent a "California Data Breach Class"

12   defined as "all residents of California whose personal information was compromised as a result of

13   the data breach announced by Adobe in October 2013."  (*Id.* ¶ 101.)  All six Plaintiffs purport to

14   represent a "Contract Class," which is defined as "All persons residing or headquartered within the

15   United States who are currently in a contractual relationship with Adobe governed by one of

16   Adobe's End-User Licensing Agreement or General Terms of Use."  (*Id.*)  Halpain and McGlynn

17   purport to represent a "Restitution Class," defined as "All persons residing or headquartered within

18   the United States who purchased a ColdFusion product or Creative Cloud subscription within four

19   years of the filing of this lawsuit."  (*Id.*)

## LEGAL STANDARDS

21   Adobe moves to dismiss the Complaint under Federal Rules of Civil Procedure 12(b)(1) and

22   (6) because Plaintiffs lack Article III and statutory standing and fail to state a claim upon which

23   relief may be granted.

24   As this Court observed,

25   > To have Article III standing a plaintiff must plead and prove that he or she
26   > suffered injury sufficient to satisfy the "case or controversy" requirement

27   (Footnote Cont'd From Previous Page)

28   (S.D. Cal. 2012) (user agreement and privacy policy appropriate for judicial notice where plaintiffs' complaint relies on and quotes them, and their authenticity is unquestioned).

4

NOTICE OF MOTION AND MOTION AND MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
AMENDED CONSOLIDATED COMPLAINT, CASE NO. 5:13-CV-05226-LHK

1
2
3
4
5

> of Article III of the United States Constitution.  *See Clapper v. Amnesty Int'l USA*, --- U.S. ---, 133 S. Ct. 1138, 1147 (2013). . . . Therefore, for Article III standing, a plaintiff must establish:  (1) injury-in-fact that is concrete and particularized, as well as actual or imminent; (2) that this injury is fairly traceable to the challenged action of the defendant; and (3) that this injury is redressable by a favorable ruling from the court . . . . The party invoking federal jurisdiction bears the burden of establishing these elements.

6   *In re iPhone Application Litig.*, --- F. Supp. 2d ---, 2013 WL 6212591, at *5–6 (N.D. Cal. Nov. 25,

7   2013) (citations and quotation marks omitted).  The Supreme Court has made clear that

8   "[a]llegations of *possible* future injury are not sufficient" but must be "*certainly impending* to

9   constitute injury in fact."  *Clapper*, 133 S. Ct. at 1147 (citation and quotation marks omitted).  The

10  UCL also requires plaintiffs to demonstrate statutory standing, meaning that a plaintiff must

11  demonstrate that she "'suffered [an] injury in fact and [] lost money or property as a result of the

12  unfair competition.'"  *iPhone*, 2013 WL 6212591, at *6 (citation omitted); *see also Rubio v. Capital*

13  *One Bank*, 613 F.3d 1195, 1203–4 (9th Cir. 2010).

14          Whether the claim is couched as one for declaratory or injunctive relief, a plaintiff must

15  establish they have suffered a concrete and particularized harm.  *See Principal Life Ins. Co. v.*

16  *Robinson*, 394 F.3d 665, 669 (9th Cir. 2005) (standard to bring action under the Declaratory

17  Judgment Act is "*identical to Article III's constitutional case or controversy requirement*" (citation

18  omitted and emphasis added)); *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007)

19  (plaintiff seeking prospective injunctive relief must demonstrate not only that "he has suffered or is

20  threatened with a 'concrete and particularized' legal harm" but also that there is a "real and

21  immediate threat of repeated injury") (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 111

22  (1983) and *O'Shea v. Littleton*, 414 U.S. 48 (1974)).

23          Pursuant to Rule 12(b)(6), Plaintiffs must allege "enough facts to state a claim to relief that

24  is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial

25  plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

26  inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662,

27  678 (2009) (citing *Twombly*, 550 U.S. at 556).  Moreover, "[t]hreadbare recitals of the elements of a

28  cause of action, supported by mere conclusory statements, do not suffice," and a plaintiff cannot

state a claim by offering nothing more than "naked assertions devoid of further factual

enhancement."  *Id.* (citation, quotation marks and internal brackets omitted).

**ARGUMENT**

**I.      THE CALIFORNIA DATA BREACH NOTIFICATION ACT CLAIM (COUNT I)
        SHOULD BE DISMISSED FOR LACK OF STANDING AND FAILURE TO STATE
        A CLAIM PURSUANT TO FED. R. CIV. P. 12(B)(1) AND (6).**

In Count I, the four California Plaintiffs—Duke, Kar, Halpain and McGlynn—request

injunctive relief for alleged violations of California Civil Code Sections 1798.81.5(b) and 1798.82

(the "California Data Breach Notification Act").  That statute contains two relevant requirements.

First, it requires businesses that own or license personal information about California residents to

"implement and maintain reasonable security procedures and practices appropriate to the nature of

the information, to protect the personal information from unauthorized access, destruction, use,

modification, or disclosure."  Cal. Civ. Code § 1798.81.5(b).  Second, where there has been an

"unauthorized acquisition of computerized data that compromises the security, confidentiality, or

integrity of personal information," the law requires that notice be provided to California residents

whose unencrypted personal information may have been impacted.  *Id.* §§ 1798.82(a) & (g).  Notice

is to be provided "in the most expedient time possible and without unreasonable delay, consistent

with . . . any measures necessary to determine the scope of the breach and restore the reasonable

integrity of the data system."  *Id.* § 1798.82(a).  Plaintiffs seek relief pursuant to the law's injunctive

remedy provision—Section 1798.84(e)—which provides that "[a]ny business that violates, proposes

to violate, or has violated this title may be enjoined."  Plaintiffs ask for an injunction requiring

Adobe to implement eleven security measures that Plaintiffs deem to be "reasonable security

procedures," and that Adobe "notify[] affected customers of any future data breaches" within 24

hours of discovery of the breach.  (Compl. ¶¶ 116–17.)

Plaintiffs lack statutory or Article III standing to bring their Section 1798.84(e) claim

because they do not allege that they have suffered any injury *as a result of an alleged violation of*

*the statute*—that is, they allege no injury from the alleged failure to implement reasonable security

or from any alleged delay in the provision of notice.  To have standing under Section 1798.84(e), a

plaintiff "*must have suffered a statutory injury*" and this is the rule "*regardless of the remedies he*

6

*or she seeks.*"  *Boorstein v. CBS Interactive, Inc.*, 222 Cal. App. 4th 456, 466–67 (2013) (applying Section 1798.84(e) to California's "Shine the Light" law (Cal. Civ. Code § 1798.83), *review denied* (Mar. 12, 2014) (emphases added)).  Only where a plaintiff makes a threshold showing that she has been "*injured by a violation*" of the statute, can she bring a private action to pursue that violation, whether seeking injunctive relief or otherwise.  *Id.* at 467 (emphasis added).  Simply stated, "a violation of the statute, without more, is insufficient." *Id.*[4]  Of course, the same is true under Article III—a plaintiff lacks standing absent an allegation of a cognizable injury that is fairly traceable to the alleged wrong.  *See Clapper*, 133 S. Ct. at 1147.[5]  Accordingly, to be able to pursue their claims for injunctive relief, Plaintiffs must allege an actual injury incurred due to an alleged violation of the statute, whether resulting from an alleged failure to "promptly notify" impacted individuals or from an alleged failure to employ reasonable security measures.  Here, no Plaintiff alleges any such injury.

*First*, none of the four California Plaintiffs alleges an injury fairly traceable to any alleged "failure to promptly notify" users about the Incident.  Notably, each Plaintiff alleges receiving Adobe's notice of the Incident within several weeks after Adobe discovered it,[6] and no Plaintiff alleges being injured during that brief period.  Therefore, Plaintiffs cannot show that they were "injured by a violation" of the statute.[7]  *Boorstein*, 222 Cal. App. 4th at 467.

---

[4] The Ninth Circuit has permitted standing for certain statutory violations where the statute does not have an injury requirement.  *See Edwards v. First Am. Corp.*, 610 F.3d 514, 517 (9th Cir. 2010); *cf. Opperman v. Path, Inc.*, No. 13-453, 2014 U.S. Dist. LEXIS 67225, at *31 (N.D. Cal. May 14, 2014).  That is not the case here, because the statute does have an injury requirement, rendering *Edwards* inapplicable.  *Boorstein*, 222 Cal. App. 4th at 467–68.

[5] *But see In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, -- F. Supp. 2d ---, 2014 WL 223677, at *53 (S.D. Cal. Jan. 21, 2014) (plaintiffs could not recover damages under California Data Breach Notification Act because they failed to allege any injury attributable to alleged delay in notification, but permitting, without discussion, claim for injunction to proceed).

[6] *See* Compl. ¶¶ 76 (Duke); 80 (Kar); 85 (Halpain); 92 (McGlynn).

[7] Moreover, Plaintiffs' request that Adobe provide notification to individuals impacted by "any future breaches"—without regard to the nature, scope, extent, specificity or severity of such "future breach"—is premised on entirely speculative future events that cannot warrant injunctive relief.  *See Lyons*, 461 U.S. at 111 ("The speculative nature of Lyons' claim of future injury requires a finding that this prerequisite of equitable relief has not been fulfilled.").

NOTICE OF MOTION AND MOTION AND MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
AMENDED CONSOLIDATED COMPLAINT, CASE NO. 5:13-CV-05226-LHK

*Second*, Plaintiffs do not allege any injury attributable to a "failure to implement reasonable security measures." No Plaintiff alleges that they suffered any identity theft, that their financial accounts have been compromised, or that their credit cards or other financial information has been misused. They do not allege any injury at all, and seek no damages. Three of the four California Plaintiffs (Halpain, Kar and McGlynn, but not Duke) make various other efforts to establish standing, and we address each of those in turn:

The purchase of additional credit monitoring. Plaintiffs Halpain and Kar both allege that despite Adobe's offer of one year of free credit monitoring, they chose to purchase *additional* monthly credit monitoring services ranging from $15 to $19.95 per month, and Halpain also alleges that she "has spent time and money as a result of the breach in order to protect her PII" and that she "has to monitor the security of the websites she maintains." (Compl. ¶¶ 81, 86, 89.) The Supreme Court has squarely held that such voluntary expenditures of time or money in anticipation of future hypothetical harm do not constitute injury-in-fact. In *Clapper*, the Court held that a plaintiff cannot "manufacture standing" by claiming to have paid money or spent time to mitigate a future hypothetical risk. 133 S. Ct. at 1151 (Plaintiffs "cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending"). Other cases are in accord. *See SAIC*, 2014 WL 1858458, at *7 (rejecting credit monitoring costs claims under *Clapper*); *Galaria v. Nationwide Mut. Ins. Co.*, --- F. Supp. 2d ---, 2014 WL 689703, at *9 (S.D. Ohio Feb. 10, 2014) (under *Clapper*, plaintiffs "cannot create standing by choosing to make expenditures in order to mitigate a purely speculative harm"); *Strautins v. Trustwave Holdings, Inc.*, --- F. Supp. 2d ---, 2014 WL 960816, at *4 n.9 (N.D. Ill. Mar. 12, 2014) (*Clapper* requires rejection of standing based on plaintiff's allegations that she will be forced to incur out-of-pocket expenses to mitigate risk of identity theft); *Polanco v. Omnicell, Inc.*, --- F. Supp. 2d ---, 2013 WL 6823265, at *14 (D.N.J. Dec. 26, 2013) ("[E]xpenses incurred in anticipation of future harm . . . [are] not sufficient for purposes of establishing Article III standing."); *In re Barnes & Noble Pin Pad Litig.*, No. 12-cv-8617, 2013 WL 4759588, at *4 (N.D. Ill. Sept. 3, 2013) (costs incurred to minimize risks due to security breach insufficient to establish standing in the wake of *Clapper*).

1    Early cancellation fees.  Plaintiffs Halpain and McGlynn contend that they would have to

2    pay early cancellation fees if they chose to cancel their year-long subscriptions to Creative Cloud

3    before they expired.  (Compl. ¶¶ 88, 93.)  Just like credit monitoring expenses, such fees are merely

4    out-of-pocket expenses to mitigate or minimize the risk of future harm, which are not cognizable as

5    a matter of law.  *Clapper*, 133 S. Ct. at 1151.  In any event, *neither Plaintiff has suffered this*

6    *purported injury*:  both Halpain and McGlynn allege that they have *not*, in fact, incurred this fee.  At

7    most, they allege that while they could have chosen to terminate their contract and paid the fee, they

8    chose not to.  In fact, quite to the contrary, Halpain's allegations reveal that her annual contract

9    came to an end in February or March 2014 (*see* Compl. ¶ 83 (Halpain signed one year contract

10   beginning in February 2013)), and that while she could have at that time ended her contract with no

11   fee (*Id.* ¶ 88), she instead elected to *re-subscribe* even after filing her complaint in this lawsuit.  (*See*

12   *Id.* ¶ 89 (as of April 2014, Halpain still "maintained" her websites "with Adobe's software").)

13   Data on "black market websites."  Halpain claims that she received an identity-theft service

14   alert on February 15, 2014—months after the Incident—indicating that some of her "personal

15   information [was] on black market websites."  (*Id.* ¶ 87.)  Halpain does not allege what personal

16   information was allegedly on these "black market websites" or whether it was the same information

17   she allegedly provided to Adobe.  Nor does she provide any facts to plausibly connect her

18   information appearing on these websites with the *Adobe* Incident—as opposed to one of the other

19   numerous and widely-reported security breaches in the months before and after the Adobe incident

20   was disclosed.[8]  In this context, a mere coincidence in timing—which is all that Halpain alleges—is

21   insufficient to establish a causal connection for standing purposes.  *See Stollenwerk v. Tri-W. Health*

22   *Care Alliance*, 254 F. App'x  664, 667–68 (9th Cir. 2007); *Hammond v. The Bank of New York*

23   *Mellon Corp.*, No. 08 Civ. 6060, 2010 WL 2643307, at *5, 13 (S.D.N.Y. June 25, 2010).  This

24

25   _____

26   [8] *See, e.g.*, *In re Target Corp. Customer Data Sec. Breach Litig.*, --- F. Supp. 2d ---, 2014 WL 1338473 (J.P.M.L. Apr. 2, 2014) (consolidating 33 data breach class actions involving consumer credit/debit card information); Class Action Compl., *Chau v. Neiman Marcus Group Ltd., Inc.*, No. 14-00597 (S.D. Cal. filed Mar. 14, 2014) (data breach class action against retailer involving consumer credit/debit card information); Class Action Compl., *Moyer v. Michaels Stores Inc.*, No. 14-00561 (N.D. Ill. filed Jan. 27, 2014) (same).

27

28

NOTICE OF MOTION AND MOTION AND MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
AMENDED CONSOLIDATED COMPLAINT, CASE NO. 5:13-CV-05226-LHK

1    alleged injury is therefore not cognizable because it is not "fairly traceable" to Adobe's alleged

2    misconduct.  *Clapper*, 133 S. Ct. at 1147.

3         "Increased risk."  Plaintiffs' only remaining basis for standing is their belief that they face

4    an increased risk of *future* harm as a result of the Incident or future breaches.  (*See* Compl. ¶¶ 5, 67,

5    72.)  The Supreme Court has also rejected this argument, squarely holding that an increased risk of

6    future harm does not establish injury for purposes of standing:  "Allegations of *possible* future

7    injury" are not sufficient; rather, "threatened injury must be *certainly impending* to constitute injury,

8    in fact."  *Clapper*, 133 S. Ct. at 1147 (citation omitted).  In the context of data breach cases, courts

9    now conclude that a mere increased risk of *future* injury is insufficient.  These decisions find that

10   "*Clapper* compels rejection of [any] claim that an increased risk of identity theft is sufficient to

11   satisfy the injury-in-fact requirement for standing."  *Strautins*, 2014 WL 960816, at *4; *see also*

12   *Yunker v. Pandora Media, Inc.*, No. 11-CV-03113 JSW, 2013 WL 1282980, at *5 (N.D. Cal. Mar.

13   26, 2013) (holding that "at best Yunker alleges facts that show it might be possible that, in the

14   future, he could be the victim of identity theft.  However, the possibility of future harm is

15   insufficient to establish standing" under *Clapper*); *SAIC*, 2014 WL 1858458, at *6 ("*Clapper* makes

16   clear" that "increased risk of harm alone constitutes injury insufficient to confer standing");

17   *Galaria*, 2014 WL 689703, at *8 ("[I]ncreased risk that Plaintiffs will be victims of identity theft,

18   identity fraud, medical fraud, or phishing at some indeterminate point in the future does not

19   constitute injury sufficient to confer standing where . . . the Complaint lacks sufficient factual

20   allegations to show such future injury is imminent or certainly impending."); *Barnes & Noble*, 2013

21   WL 4759588, at *3–4 (plaintiffs lacked standing where they did not allege any misuse of data in the

22   wake of data breach); *Polanco*, 2013 WL 6823265, at *13–14 (same).

23        One post-*Clapper* decision has held that an increased risk of future injury is sufficient to

24   establish standing in the context of a data breach.  *See Sony*, 2014 WL 223677, at *8–9.  Adobe

25   respectfully submits that *Sony* is incorrect and should not be followed.  First, it is contrary to the

26   otherwise consistent body of post-*Clapper* decisions, all of which correctly construe *Clapper* as

27   directing that a mere increased risk of future injury is insufficient.  Indeed, in the most recent such

28   decision, the District Court for the District of Columbia catalogued many of these cases and then

                                                    10

referred to the outlier *Sony* decision with a "but see" citation.  *SAIC*, 2014 WL 1858458, at *8

("[S]ince *Clapper* was handed down last year, courts have been even more emphatic in rejecting

'increased risk' as a theory of standing in data-breach cases.").

Second, *Sony* based its decision on the outdated and heavily criticized decision in *Krottner*

*v. Starbucks Corp.*, 628 F.3d 1139 (9th Cir. 2010).  *Krottner*, as well as the Seventh Circuit's

decision it relied on, *Pisciotta v. Old National Bancorp*, 499 F.3d 629 (7th Cir. 2007), were both

pre-*Clapper* decisions that contained very brief analyses of standing in the data breach context, and

analogized such cases to toxic tort cases to conclude that an increased risk of future identity theft

was sufficient to confer standing.  Even before *Clapper*, the *Krottner* and *Pisciotta* decisions came

under direct judicial criticism for being inconsistent with bedrock Article III principles and for

failing to conduct the standing analysis required by the Supreme Court.  For example, the Third

Circuit expressly rejected *Krottner* and *Pisciotta*, observing the "skimpy rationale" in those

decisions and then explaining:

> Neither *Pisciotta* nor *Krottner*, moreover, discussed the constitutional
> standing requirements and how they apply to generalized data theft
> situations.  Indeed, the *Pisciotta* court did not mention—let alone
> discuss—the requirement that a threatened injury must be "imminent" and
> "certainly impending" to confer standing.  Instead of making a
> determination as to whether the alleged injury was "certainly impending,"
> both courts simply analogized data-security-breach situations to defective-
> medical-device, toxic-substance-exposure, or environmental-injury cases.
> * * * We . . . decline to analogize this case to those cases.

*Reilly v. Ceridian Corp.*, 664 F.3d 38, 44, 46 (3d Cir. 2011) (citations omitted).  Many other courts

have likewise criticized the reasoning behind *Pisciotta* and *Krottner*, *see SAIC*, 2014 WL 1858458,

at *8 (referring to *Krottner* as "thinly reasoned" and finding its holding "clearly not supportable"

after *Clapper*),[9] or limited *Krottner* to its facts.  *Yunker*, 2013 WL 1282980, at *5.  It is therefore

not surprising that *Sony* has already been relegated to a "but see" reference, as it (and the authority

it relies on) are contrary to the vast weight of current case law.  *SAIC*, 2014 WL 1858458, at *8.

---

[9] *See also Amburgy v. Express Scripts, Inc.*, 671 F. Supp. 2d 1046, 1051 (E.D. Mo. 2009) (refusing
to follow *Pisciotta* because the court "engaged in no discussion applying the Supreme Court's
recognized standard for determining whether the plaintiffs in the database breach case had standing
under Article III"); *Hammond*, 2010 WL 2643307, at *8 (court "not persuaded" by *Pisciotta*);
*Allison v. Aetna, Inc.*, No. 09-2560, 2010 WL 3719243, at *5 n.5 (E.D. Pa. Mar. 9, 2010) (harm
from identity theft is qualitatively different from harms in toxic tort cases on which *Pisciotta* relies).

1

\*   \*   \*   \*

2     Plaintiffs' failure to allege any injury resulting from the alleged failure to provide reasonable

3 security, or any purported delay in providing notice, renders Plaintiffs without standing to seek

4 injunctive relief under Section 1798.84(e).  Given that Plaintiffs are unable to pursue their claim

5 under the California Data Breach Notification Act, Plaintiffs also fail to allege any practice that is

6 "unlawful" under the UCL.  *See Haskins v. Symantec Corp.*, Case No. 13-cv-01834-JST, 2013 WL

7 6234610, at \*7 (N.D. Cal. Dec. 2, 2013) (dismissing claims under UCL unlawful prong where

8 plaintiff did not plead cause of action under any predicate statute).  Count I should therefore be

9 dismissed.

10   **II.     PLAINTIFFS' DECLARATORY RELIEF CLAIM (COUNT II) SHOULD BE
         DISMISSED AS A NON-JUSTICIABLE ATTEMPT TO OBTAIN A BREACH OF**

11   **     CONTRACT REMEDY WITHOUT PROVING A BREACH OF CONTRACT.**

12     Plaintiffs have dropped their claims for breach of contract.  Nonetheless, in Count II, all six

13 Plaintiffs seek a declaration that "Adobe's existing security measures do not comply with its

14 contractual obligations . . . in accordance with [its] Privacy Policy" and that Adobe must implement

15 and maintain the eleven security measures specified by Plaintiffs in order to comply with those

16 contractual obligations.  (Compl. ¶¶ 124, 119.)  The wide-ranging and detailed declaration they seek

17 must be viewed in the context of the contract referred to in their Complaint, which provides:

18       We provide reasonable administrative, physical and technical security
         control to protect your information.  However, despite our efforts, no

19       security controls are 100% effective and Adobe cannot ensure or warrant
         the security of your personal information.

20
   RJN Exs. B and C.  Although Plaintiffs seek relief based on Adobe's purported failure to "comply

21 with its contractual obligations," *Plaintiffs do not—and cannot—assert a breach of contract claim*.

22 This is in part because they cannot allege that they suffered damages, which is an essential element

23 of a breach of contract claim.[10]  Nor can they overcome their clear agreement that Adobe "cannot

24

25

26   _____

     [10] *See, e.g.*, *Ruiz v. Gap, Inc.*, 622 F. Supp. 2d 908, 917 (N.D. Cal. 2009), *aff'd*, 380 F. App'x 689
     (9th Cir. 2010) (where plaintiff had not been a victim of identity theft, he could present "no

27   evidence of appreciable and actual damage" sufficient to sustain a breach of contract claim); *Key v.
     DSW, Inc.*, 454 F. Supp. 2d 684, 685 (S.D. Ohio 2006) (dismissing breach of contract claim

28   involving unauthorized access to personal information for failure to allege cognizable damages).

ensure or warrant the security of [their] personal information."  Instead, they openly seek an advisory opinion that Adobe breached all of its contracts with all of its customers so that other putative class members—some of whom hypothetically *may* at some point in the future suffer identity theft or monetary damage—"will not have to individually re-litigate the technical issue of Adobe's security obligations."  (Compl. ¶ 5.)  This request should be denied because (1) Plaintiffs lack standing; (2) Plaintiffs improperly seek an advisory opinion; and (3) they have failed to state a claim for breach of contract relief.

**A.    Plaintiffs Lack Standing To Seek Declaratory Relief Because They Fail To Allege Injury-In-Fact Fairly Traceable to Adobe's Challenged Conduct, and the Claim Should Therefore Be Dismissed Pursuant to Fed. R. Civ. P. 12(b)(1).**

Plaintiffs must establish standing to bring a declaratory relief action, just as for any other claim.  *Mayfield v. United States*, 599 F.3d 964, 969 (9th Cir. 2010).  But for the same reasons that the four California Plaintiffs lack standing to pursue their claims under the California Data Breach Notification Act in Count I—namely, that they fail to allege injury-in-fact fairly traceable to Adobe's conduct—they also lack standing to seek declaratory relief in Count II because they fail to allege any injury-in-fact, much less one that is fairly traceable to Adobe's alleged failure to live up to its "contractual obligations" regarding security.  (*See* Section I above.)  *See Gest v. Bradbury*, 443 F.3d 1177, 1181 (9th Cir. 2006) (declaratory and injunctive relief plaintiffs must establish more, not less, than traditional standing requirements).  The two non-California Plaintiffs, Page and McHenry, fare no better.  They allege no injury whatsoever; they allege only that they purchased one or more Adobe products and that they received a notice from Adobe about the Incident.  (*See* Compl. ¶¶ 95–97, 98–100.)  Like the California Plaintiffs, Page and McHenry also fail to allege any injury-in-fact fairly traceable to the Incident and lack Article III standing to seek declaratory relief.

**B.    Plaintiffs' Claim Is Not Ripe and Seeks an Impermissible Advisory Opinion, and Should Therefore Be Dismissed Pursuant to Fed. R. Civ. P. 12(b)(1).**

Plaintiffs' request for a declaration that Adobe breached of all of its contracts with all of its customers is a request for an advisory opinion and an effort to obtain breach of contract relief without alleging (much less proving) a claim for breach of contract.  Only where "'there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and

NOTICE OF MOTION AND MOTION AND MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
AMENDED CONSOLIDATED COMPLAINT, CASE NO. 5:13-CV-05226-LHK

1    reality to warrant the issuance of a declaratory judgment'" is a claim ripe for review.  *Robinson*, 394

2    F.3d at 671 (quoting *Maryland Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941)).  Absent

3    a controversy that is "real, substantial, and capable of specific relief through a decree of conclusive

4    character," a claim for declaratory relief would seek an impermissible advisory opinion.  *See Veoh*

5    *Networks, Inc. v. UMG Recordings, Inc.*, 522 F. Supp. 2d 1265, 1268 (S.D. Cal. 2007) (citation

6    omitted).  Where, as here, a claim is not ripe, "there is no case or controversy, and the court lacks

7    subject-matter jurisdiction."  *Robinson*, 394 F.3d at 669 (citation and quotation marks omitted).

8          There is no actual controversy here.  Plaintiffs merely contend that "Adobe maintains that its

9    security measures were adequate and remain adequate" and that they disagree.  (Compl. ¶ 123).  But

10   Plaintiffs cannot seriously allege there is an actionable dispute about whether Adobe claims its

11   security is "adequate" when there is a contract between the parties stating that "no security controls

12   are 100% effective" and that "Adobe cannot ensure or warrant the security of your personal

13   information."  RJN Exs. B and C.  In any event, Plaintiffs do not allege any dispute of the kind the

14   courts have found sufficient to establish ripeness.  Plaintiffs allege no "measurable financial

15   consequences," *Robinson*, 394 F.3d at 671—nor, indeed, *any adverse consequences of sufficient*

16   *immediacy and reality*—in the absence of their requested judicial declarations.  Nor do Plaintiffs

17   allege that they face any "Draconian threat" of any sort if declaratory relief were not granted, s*ee*

18   *Bisson v. Bank of Am., N.A.*, 919 F. Supp. 2d 1130, 1139 (W.D. Wash. 2013), or that they have any

19   "*bona fide . . .* necessity" for a declaration of rights.  *Maytag Corp. v. Int'l Union, United Auto.,*

20   *Aerospace & Agric. Implement Workers of Am.*, 687 F.3d 1076, 1082 (8th Cir. 2012).

21         Plaintiffs admit that what they seek is an advance, advisory ruling for *future* breach-of-

22   contract claims by unknown individuals who, at some point in time, *may* sustain some harm from

23   the Incident.  Thus, they contend that declaratory relief is necessary only so that "users [other than

24   themselves] who suffer identity theft or other specific monetary damage as a result of the breach

25   *will not have to individually re-litigate the technical issue of Adobe's security obligations*."

26   (Compl. ¶ 5 (emphasis added).)  This is by its own terms an impermissible attempt to "gain a

27   litigation advantage by obtaining an advance ruling," *Calderon v. Ashmus*, 523 U.S. 740, 747

28   (1998), and should be denied.

NOTICE OF MOTION AND MOTION AND MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
AMENDED CONSOLIDATED COMPLAINT, CASE NO. 5:13-CV-05226-LHK

1

     **C.**    **Plaintiffs Cannot Disguise an Inadequate Breach of Contract Claim as a Claim for Declaratory Relief, and the Claim Should Therefore Be Dismissed Pursuant to Fed. R. Civ. P. 12(b)(6).**

2

3        Having elected not to bring a breach of contract claim, Plaintiffs cannot avoid their

4 obligation to plead and prove all of the elements of breach of contract by recasting that claim as one

5 seeking a declaration that Adobe has breached its contractual obligations.  That is because a claim

6 which "incorrectly couches a breach of contract action as a request for a declaratory judgment" falls

7 outside the scope of the Declaratory Judgment Act.  *Household Fin. Servs., Inc. v. N. Trade Mortg.*

8 *Corp.*, No. 99 C 2840, 1999 WL 782072, at *3 (N.D. Ill. Sept. 27, 1999).  Thus, in *Gamble v.*

9 *GMAC Mortgage Corp.*, the Court rejected a similar attempt to obtain declaratory relief:

10

11          [P]laintiffs want the court to issue a declaratory judgment declaring that defendants breached the [contract].  They do not however, sufficiently plead the elements of the underlying breach of contract action. . . . To establish a breach of contract claim, the plaintiff must demonstrate a contract, the plaintiff's performance or excuse for nonperformance, the defendant's breach, and damage to the plaintiff.

12

13 No. C-08-05532 RMW, 2009 WL 400359, at *2 (N.D. Cal. Feb. 18, 2009).

14        Here, too, Plaintiffs fail to allege all of the elements of a breach of contract claim—

15 including the required element of damages—resulting from any purported breach of contractual

16 obligation.  Nor do Plaintiffs allege how such a breach occurred with regard to every different

17 individual, with every different contract, over a period of many years, involving an unlimited

18 number of different circumstances.  Nor do Plaintiffs show how they can overcome the express

19 disclaimer in the contract to which they agreed.  They merely assert that "Adobe has failed to live

20 up to its contractual obligations to provide reasonable security measures."  (Compl. ¶ 121.)

21 Plaintiffs apparently contend that because a data breach occurred means, *ipso facto*, that Adobe

22 failed to comply with its contractual obligations with regard to all customers.  (*See id.*)  Adobe is

23 unaware of any authority supporting such a breathtaking contention.  Plaintiffs therefore fail to state

24 an actionable claim for declaratory relief.

25

26

27

28

III.  **PLAINTIFFS' UCL CLAIM FOR INJUNCTIVE RELIEF (COUNT III) SHOULD BE DISMISSED FOR LACK OF STANDING AND FAILURE TO STATE A CLAIM FOR RELIEF.**

On behalf of the "Contract Class," all six Plaintiffs ask the Court to impose a wide ranging injunction delineating Adobe's security obligations based on their allegation that Adobe violated the UCL's "unfair" and "unlawful" prongs by "*failing to honor the terms of its contracts*" and by engaging in a "*systematic breach of the contracts*." (Compl. ¶¶ 129–30 (emphasis added).)  In other words, they seek UCL relief by labeling the "systematic breach of the contracts" as "unfair" or "unlawful," and ask the Court to impose an injunction that they believe will make Adobe "honor the terms of its contracts" in a way that is more meaningful for them.  They do this in order to alleviate the risk of "*future* security breaches." (*Id.* ¶ 5 (emphasis added).)  This claim fails because (1) Plaintiffs again lack standing; (2) Plaintiffs impermissibly seek a contract remedy without bringing and proving a breach of contract claim; and (3) Plaintiffs have failed to allege any "unlawful" or "unfair" conduct that is actionable under the UCL.

A.  **Plaintiffs Lack Article III and Statutory Standing Under the UCL Because They Fail To Allege Injury-In-Fact Fairly Traceable to Adobe's Challenged Conduct, and the Claim Should Be Dismissed Pursuant to Fed. R. Civ. P. 12(b)(1) and (6).**

As with Counts I and II, Plaintiffs lack standing to bring this injunctive relief claim because they have not suffered a cognizable injury from the purported "systematic breach of the contracts." Plaintiffs affirmatively allege that the requested injunction is necessary "to alleviate the *risk* to class members of *future security breaches.*" (Compl. ¶ 5 (emphasis added).)  As demonstrated above, no Plaintiff alleges any present injury whatsoever attributable to the Incident.  And Plaintiffs' attempt to seek relief on behalf of class members to alleviate some "future risk" from some "future security breach" that may never come to pass is simply too speculative to confer standing under Article III or the UCL.  *See Clapper*, 133 S. Ct. at 1143 ("[R]espondents' theory of *future* injury is too speculative to satisfy the well-established requirement that threatened injury must be 'certainly impending'"); *Ruiz v. Gap, Inc.*, 540 F. Supp. 2d 1121, 1127 (N.D. Cal. 2008), *aff'd*, 380 F. App'x 689 (9th Cir. 2010) (plaintiff could not state valid UCL claim where he had failed to present "any authority to support the contention that unauthorized release of personal information constitutes a loss of property").  Indeed, given that Plaintiffs do not allege any *present injury* attributable to the

16

1   breach, they also fall far short of demonstrating that they face any "real and immediate threat of

2   *repeated injury*" warranting injunctive relief.  *Bates*, 511 F.3d at 985 (emphasis added).  They

3   therefore lack standing under both Article III and the UCL.

**B.**     **Plaintiffs Cannot Seek Specific Performance Under the UCL on Their Adobe**
4              **Contracts When They Have No Breach of Contract Claim, and the Claim**
5              **Should Therefore Be Dismissed Pursuant to Fed. R. Civ. P. 12(b)(6).**

6          Plaintiffs' claim in Count III is that Adobe should be ordered to "honor the terms of its

7   contracts" by requiring Adobe to comply with the terms of Plaintiffs' proposed eleven-point

8   injunction.  Thus, what Plaintiffs seek is the contract remedy of *specific performance*.  But,

9   "[s]pecific performance is a contract remedy derivative of Plaintiffs' breach of contract claim,

10  rather than a separate cause of action."  *Guidiville Rancheria of Cal. v. United States*, --- F. Supp.

11  2d ---, 2013 WL 6512788, at *13 (N.D. Cal. Dec. 12, 2013).  As such, "it necessarily fails with

12  Plaintiffs' improper breach of contract claims."  *Id.*  Having failed to establish (or even allege) a

13  breach of contract claim, Plaintiffs cannot seek a breach of contract remedy.  Nor can they bootstrap

14  such a claim into the UCL simply by offering a "repackaged version of [their] defective breach-of-

15  contract claim" and labeling it "unfair" or "unlawful."  *Forever 21, Inc. v. Nat'l Stores Inc.*, 2:12-

16  CV-10807-ODW, 2014 WL 722030, at *5 (C.D. Cal. Feb. 24, 2014).  Rather, Plaintiffs must allege

17  that the breach of contract is "independently unlawful, unfair, or fraudulent," *Sybersound Records,*

18  *Inc. v. UAV Corp.*, 517 F.3d 1137, 1152 (9th Cir. 2008), which they have not done and cannot do.

19          Moreover, Plaintiffs do not just ask the Court to order Adobe to "honor the terms of its

20  contracts"; rather, they ask the Court to *rewrite* those contracts by inserting their proposed terms

21  into the contract.  Thus, when the contract says Adobe will provide "reasonable administrative,

22  physical and technical security controls," Plaintiffs want the Court to insert eleven specific actions

23  demanded by Plaintiffs, including that Adobe will: (1) "meaningfully educate its customers about

24  the threats they face as a result of the loss of their PII to third parties and the theft of Adobe's source

25  code, as well as the steps Adobe's customers must take to protect themselves," (2) "engage third

26  party auditors," and (3) utilize unspecified "automated security monitoring," among a host of other

27  security measures.  This is a wholly improper use of the specific performance remedy.  *See Colonial*

28  *Life & Acc. Ins. Co. v. Stentorians-L.A. Cnty. Black Fire Fighters*, No. 2:13-CV-9235-CAS, 2014

WL 794571 (C.D. Cal. Feb. 24, 2014) (dismissing claim for specific performance requiring defendant to "reasonably cooperate with and assist [plaintiff]" because terms of the agreement were "not sufficiently certain to make the precise act which is to be done clearly ascertainable" (quotation marks and citation omitted)).

C. **Plaintiffs Fail To Plead Any Violation of Law that Could Serve as a Basis For a Claim Under the UCL's "Unlawful" Prong, and the Claim Should Therefore Be Dismissed Pursuant to Fed. R. Civ. P. 12(b)(6).**

In Paragraph 130 of the Complaint, Plaintiffs allege that that Adobe's unspecified "acts, omissions and conduct" constituted "unlawful" conduct under the UCL based on: (1) an alleged violation of the California Data Breach Notification Act; (2) an allegation that Adobe's conduct resulted in "a systematic breach of the contracts," and (3) an allegation that Adobe's conduct "failed to comport with a reasonable standard of care and California public policy" as reflected in statutes "like" the Online Privacy Protection Act (OPPA), Cal. Bus. & Prof. Code §§ 22575–79; the Information Practices Act ("IPA"), Cal. Civ. Code §§ 1798–1798.78; and the California Data Breach Notification Act.  We address these in order.

As shown above, Plaintiffs lack standing to pursue their claims under the California Data Breach Notification Act, and therefore the UCL claim predicated on the purported violation of that statute necessarily fails.  *See Haskins*, 2013 WL 6234610, at *7.

Plaintiffs' vague allegation about a general "fail[ure] to comport" with unspecified standards of care and public policies "reflected in" statutes "like" OPPA and the IPA, and their naked "systematic breach of the contracts" allegations, fail for similar reasons.  They do not even try to plead causes of action for violation of either statute or, as noted, for breach of contract.  Nor could they.  *First*, Plaintiffs cannot plausibly allege a violation of OPPA because the statute requires that operators of commercial websites conspicuously post a privacy policy setting forth the types of personal information collected.  Cal. Bus. & Prof. Code § 22575(a).  They do not allege that Adobe's Privacy Policy was not "conspicuously posted" or that it did not identify the type of information collected.  *Second*, Plaintiffs also cannot allege a violation of the IPA, which governs the information collection practices of state *agencies*, not businesses.  *See* Cal. Civ. Code §§ 1798–1798.78.  *Third*, having abandoned their breach of contract claims, they cannot seek relief based on

some alleged "systematic" breach of contracts.  (*See* Section II above.)  Moreover, merely alleging a breach of contract alone cannot serve as a predicate for a UCL claim, absent a showing that the conduct constituting the breach is also independently unlawful, unfair, or fraudulent.  *See Sybersound*, 517 F. 3d at 1152.  Plaintiffs have made no such showing.

Accordingly, Plaintiffs' allegations regarding the OPPA, the IPA, or a "systematic breach of the contracts," cannot serve as the basis for a UCL "unlawful" prong claim.

**D.     Plaintiffs Fail To Plead Any Conduct That Could Serve as a Basis for a Claim Under the UCL's "Unfair" Prong, and the Claim Should Therefore Be Dismissed Pursuant to Fed. R. Civ. P. 12(b)(6).**

In Paragraph 131, Plaintiffs attempt to plead a claim under the "unfair" prong of the UCL in two ways.  First, Plaintiffs make the conclusory and formulaic allegations that Adobe's actions "offended public policy and constitute[d] immoral, unethical, oppressive, and unscrupulous, activities that caused substantial injury," and that "the gravity outweighs any potential benefits." (Compl. ¶ 131.)  Such naked recitations are insufficient.  *See Twombly*, 550 U.S. at 555; *see also, e.g.*, *Drum v. San Fernando Valley Bar Ass'n*, 182 Cal. App. 4th 247, 256 (2010) (finding plaintiff failed to allege *facts* satisfying any of three tests courts use to test claims under the UCL's unfair prong); *Bardin v. Daimlerchrysler Corp.*, 136 Cal. App. 4th 1255, 1264–73 (2006) (same).

Second, as with their "unlawful" prong claim, Plaintiffs allege that Adobe's conduct "undermines" public policy as reflected in the same statutes considered in the preceding section.  As discussed above, Plaintiffs cannot claim that they are entitled to a remedy for a purported failure to comply with a statute that they do not allege Adobe has violated.

**IV.     PLAINTIFFS' CLAIM FOR RESTITUTION UNDER THE UCL SHOULD BE DISMISSED FOR LACK OF STANDING AND FAILURE TO STATE A CLAIM FOR RELIEF PURSUANT TO FED. R. CIV. P. 12(B)(1) AND (6).**

Two of the six Plaintiffs—Halpain and McGlynn—purport to represent a class of ColdFusion or Creative Cloud purchasers who seek restitution based on their allegation that Adobe failed to advise Plaintiffs that it was not utilizing "industry leading" security practices.  Plaintiffs' request for restitution is the only claim for monetary relief in the Complaint and it, too, must be dismissed.  Neither Halpain nor McGlynn allege that they purchased ColdFusion, and so they lack standing to bring any claim with regard to that product.  More broadly, the claim fails because

19

NOTICE OF MOTION AND MOTION AND MEMORANDUM IN SUPPORT OF MOTION TO DISMISS AMENDED CONSOLIDATED COMPLAINT, CASE NO. 5:13-CV-05226-LHK

Plaintiffs' have failed to allege an actionable omission. To the contrary, Plaintiffs alleged facts which affirmatively negate the essential element of actionable reliance.

### A.    Halpain and McGlynn Lack Standing To Sue Over ColdFusion.

Halpain and McGlynn lack standing to sue over any alleged fraudulent omission related to ColdFusion because neither alleges she purchased that product. (*See* Compl. ¶¶ 82–93.) A plaintiff has standing to sue based on allegedly false advertising "only if the plaintiff experienced injury stemming from the purchase of that product." *Granfield v. NVIDIA Corp.*, No. C 11-05403 JW, 2012 WL 2847575, at *6 (N.D. Cal. July 11, 2012). "Accordingly, when a plaintiff asserts claims based both on products that she purchased and products that she did not purchase, claims relating to products not purchased must be dismissed for lack of standing." *Id.*; *see also Johns v. Bayer Corp.*, No. 09CV1935 DMS, 2010 WL 476688, at *4–5 (S.D. Cal. Feb. 9, 2010) (no standing to sue over vitamin product where plaintiff never alleged he saw ads or packaging for that product or bought it). Because neither Halpain nor McGlynn purchased ColdFusion,[11] they lack standing to sue over it.

### B.    Plaintiffs Fail to State a Claim Under the "Fraudulent" Prong of the UCL.

In support of their claim under the "fraudulent" prong of the UCL, Halpain and McGlynn meticulously avoid making an affirmative misrepresentation claim, as they had in their original complaints. *Compare* Compl. ¶¶ 135, 137–38 *with* CMC Statement at 5, Original Halpain Complaint, ECF No. 1 at ¶¶ 108–113, and Original Heimlich/McGlynn Complaint, Case No. 5:13-cv-05611-LHK, ECF No. 1 at ¶¶ 117–22 (all alleging affirmative misrepresentations claims). Rather, they allege that Adobe "fail[ed] to disclose that it does not enlist industry standard security

---

[11] Nor can Halpain and McGlynn bring allegations against ColdFusion on the basis that they purchased "substantially similar" products. *See, e.g., Miller v. Ghirardelli Chocolate Co.*, 912 F. Supp. 2d 861, 869–72 (N.D. Cal. 2012) (dismissing claims about four un-purchased Ghirardelli products that looked different, were marketed toward different customers, and had different labeling). They do not allege that ColdFusion is substantially similar to the product they did purchase—Creative Cloud. To the contrary, they allege many differences, including that: ColdFusion is a license-based product, whereas Creative Cloud is a subscription-based service (Compl. ¶¶ 6, 19(a)–(b)); ColdFusion is "used by web developers to build dynamic web sites and Internet applications," (*Id.* ¶ 19), whereas Creative Cloud is a vehicle through which Adobe "sells software subscriptions for certain software products and services" that it delivers to users through the "Cloud" (*Id.* ¶ 19(b)); and Creative Cloud monthly subscriptions range between $19.99 and $79.99, (*Id.* ¶ 20), whereas ColdFusion costs "up to several thousand dollars" for an initial license (*Id.* ¶ 19).

practices." (*See* Compl. ¶¶ 135; 137–38.)  The claim should be dismissed because Plaintiffs have failed to demonstrate two of the essential elements of a fraudulent omission claim—that Adobe had a duty to disclose the omitted information and that Plaintiffs relied on the alleged omission.

### 1.       Plaintiffs Fail To Allege a Duty to Disclose the Alleged Omission.

Plaintiffs' claim is that Adobe failed to sufficiently disclose that its products were defective in that the security provided was inadequate.  As this District recently observed:

> "As the Ninth Circuit has recently cautioned, in the context of product defect claims, 'California courts have generally rejected a broad duty to disclose.'"  *Donohue v. Apple, Inc.*, 871 F. Supp. 2d 913, 925 (N.D. Cal. 2012) (citing *Wilson v. Hewlett-Packard Co.*, 668 F. 3d 1136, 1141 (9th Cir. 2012).  Nondisclosure or concealment constitutes actionable fraud only in four circumstances:  "(1) when the defendant is in a fiduciary relationship with the plaintiff; (2) when the defendant had exclusive knowledge of material facts not known to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes partial representations but also suppresses some material facts."

*Opperman*, 2014 U.S. Dist. LEXIS 67225, at *70–71.  Here, Plaintiffs allege none of the four circumstances in which a duty to disclose an omitted fact could arise.

*First*, Halpain and McGlynn have not alleged they were in a fiduciary relationship with Adobe, nor could they.  *Elias v. Hewlett-Packard Co.*, 950 F. Supp. 2d 1123, 1137 (N.D. Cal. 2013) (Koh, J.) (dismissing fraudulent omission claim because "Plaintiff does not allege a basis for finding a fiduciary relationship with HP."); *Falk v. Gen. Motors Corp.*, 496 F. Supp. 2d 1088, 1095 (N.D. Cal. 2007) ("Plaintiffs do not plead a fiduciary relationship between themselves and GM. They therefore fail to state a duty to disclose under the first *Judkins* factor.").  Plaintiffs allege nothing more than arm's-length relationships with Adobe.

*Second*, Plaintiffs do not allege that Adobe had exclusive knowledge of material facts regarding its security practices.  In fact, Plaintiffs' affirmative allegations that Adobe's security practices were a matter of public record (*see* Compl. ¶¶ 42–46) means that Adobe could not have had such exclusive knowledge.  *See Herron v. Best Buy Co.*, 924 F. Supp. 2d 1161, 1175 (E.D. Cal. 2013) (defendant lacked exclusive knowledge when plaintiff admitted in complaint that *Newsweek* published an article publicly criticizing defendant for the same reasons raised by plaintiff); *Gray v. Toyota Motor Sales, U.S.A.*, No. CV-08-1690 PSG, 2012 WL 313703, at *8 (C.D. Cal. Jan. 23,

NOTICE OF MOTION AND MOTION AND MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
AMENDED CONSOLIDATED COMPLAINT, CASE NO. 5:13-CV-05226-LHK

1    2012) (defendant lacked exclusive knowledge where *Consumer Reports* and *USA Today* reported on

2    inaccurate mileage estimates at issue in plaintiff's complaint).

3            *Third*, Halpain and McGlynn do not allege that Adobe actively concealed any facts but

4    rather only that Adobe failed to disclose that it did not utilize industry standard security practices.

5    But, "[m]ere nondisclosure does not constitute active concealment." *Herron*, 924 F. Supp. 2d at

6    1176.  To the contrary, far from "actively concealing" the risk of security incidents, Adobe's

7    contract with Plaintiffs specifically indicated that, "despite our efforts, no security controls are

8    100% effective and Adobe cannot ensure or warrant the security of your personal information."

9    Further, in its General Terms of Use, Adobe advised users that "Adobe has . . . no responsibility or

10   liability for the . . . security [or] privacy" of communications "originating with or involving use of

11   the Services." RJN Ex. D (General Terms of Use (Oct. 6, 2012)) at § 9.1.  Likewise, Adobe

12   disclosed, and Halpain and McGlynn expressly "agree[d] that" Adobe's services were provided "as

13   is" and that Adobe made "no warranty that" its website, services, or a user's materials would be

14   "secure." *Id.* at § 13.1.  Given that Adobe provided its services with "no warranty," it had no

15   affirmative duty to disclose. *Opperman*, 2014 U.S. Dist. LEXIS 67225, at *71–72; *Wilson*, 668

16   F.3d at 1141 ("A manufacturer's duty to consumers is limited to its warranty obligations absent

17   either an affirmative misrepresentation or a safety issue.").

18           *Fourth*, Halpain and McGlynn do not allege that Adobe made specific representations that

19   its systems were secure without disclosing "facts which materially qualify" those representations,

20   and thus cannot state a claim based on partial representations. *Herron*, 924 F. Supp. 2d at 1177.

21   Again, Plaintiffs cannot make this allegation given their *contractual agreement* that "no security

22   controls are 100% effective" and that Adobe was providing "no warranty" for immunity from any

23   security breaches.  If, on the other hand, Plaintiffs contend the alleged omission is contrary to an

24   affirmative representation by pointing to *non-contractual statements* about "latest security

25   practices" or "industry-leading security," that argument would also fail.  There was no omission

26   because it is undisputed that Adobe disclosed that whatever security Adobe provided would be less

27   than 100% effective and could not be guaranteed.  But even beyond that, the quoted statements

28   would amount to no more than non-actionable puffery. *Elias*, 950 F. Supp. 2d at 1133–34 (ads that

22

NOTICE OF MOTION AND MOTION AND MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
AMENDED CONSOLIDATED COMPLAINT, CASE NO. 5:13-CV-05226-LHK

computer was "ultra-reliable" or "packed with power" were not actionable because they said nothing about specific characteristics or components of computer); *In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 834 F. Supp. 2d 566, 592 (S.D. Tex. 2011) *rev'd in part on other grounds sub nom. Lone Star Nat. Bank, N.A. v. Heartland Payment Sys., Inc.*, 729 F.3d 421 (5th Cir. 2013) (statements about "layers of state-of-the-art security" in data breach case were non-actionable puffery); *cf. In re Linkedin User Privacy Litig.*, Case No. 5:12-CV-03088-EJD, 2014 WL 1323713, at *9 (N.D. Cal. Mar. 28, 2014) (observing that defendant in that case did not contend that "industry leading" language was puffery).  They are not affirmative representations of fact that Adobe had a duty to qualify, particularly given the undisputed and unambiguous contractual terms.

### 2.      Plaintiffs Do Not Allege Actionable Reliance on the Alleged Omissions.

Plaintiffs' fraudulent omissions claim must be dismissed for the additional reason that Halpain and McGlynn's own allegations negate the required element of reliance.  An actual reliance requirement applies "to claims both of misrepresentations and fraudulent omissions" under the UCL.  *In re Facebook PPC Adver. Litig.*, No. 5:09-CV-03043-JF, 2010 WL 3341062, at *9 (N.D. Cal. Aug. 25, 2010).  In order to state a claim under the "fraudulent" prong of the UCL, "Plaintiffs must set forth specific facts showing that they *actually relied* on [the] misrepresentations" (or, in this case omissions) "and suffered economic injury as a result of that reliance."  *iPhone*, 2013 WL 6212591, at *7 (emphasis added).  "Reliance is proved by showing that the defendant's misrepresentation or nondisclosure was an immediate cause of the plaintiff's injury-producing conduct."  *Facebook*, 2010 WL 3341062, at *9 (citation, quotation marks and brackets omitted).

To demonstrate reliance on an omission, Plaintiffs must show that "had the omitted information been disclosed, one would have been aware of it and behaved differently."  *Id.* at *10 (citing *Mirkin v. Wasserman*, 5 Cal. 4th 1082, 1093 (1993)).   Therefore:

> If Plaintiffs would have considered the information but would have nonetheless entered into a contract, then they do not have standing to sue under the UCL because they would not be able to show that [the] nondisclosure was the immediate cause of their injuries.

*Thomas v. Sprint Solutions, Inc.*, No. C08-5119, 2010 WL 1263189, at *5 (N.D. Cal. Mar. 30, 2010) (quotation marks and citation omitted).

1   Thus, in *Noll v. eBay*, the plaintiffs claimed that eBay's contracts fraudulently omitted to

2   disclose that certain auction listing fees would be recurring (as opposed to one time) charges. *Noll*

3   *v. eBay, Inc.*, No. 5:11-CV-04585-EJD, 2013 WL 2384250, at *1 (N.D. Cal. May 30, 2013). The

4   plaintiffs alleged "that they relied on these omissions and would not have chosen to place" their

5   listings "had they known" the fees would recur. *Id.* at *4. The Court dismissed those omissions

6   claims, finding that plaintiffs' failure to allege that they cancelled their listings or otherwise ceased

7   placing listings upon discovering that eBay charged recurring fees was "fatal to Plaintiffs' fraud-

8   based claims." *Id.* at *4.

9   The same holds true here. Plaintiffs affirmatively allege that they could have cancelled their

10  subscriptions after learning about the alleged security deficiencies, and indeed the express terms of

11  the contracts that Halpain and McGlynn rely upon provide that they had the option to "cancel" their

12  subscriptions at any time.[12]  And even though they—having filed suit—clearly believe that Adobe's

13  security is subpar, both Plaintiffs allege that *they chose not to cancel their contracts*. (*See* Compl.

14  ¶¶ 83, 89, 93.)  In fact, as discussed above, Halpain's allegations reveal that she has *affirmatively*

15  *decided to re-subscribe* to Creative Cloud even after her annual contract terminated in February or

16  March of 2014 when she could have terminated the contract with no fee. She cannot square her

17  allegation that "had she known that Adobe employed substandard security practices, she would not

18  have subscribed to the Creative Cloud service," with her simultaneous allegation that even after

19  learning about Adobe's purported substandard security practices, she decided to re-subscribe to the

20  same product. (*See* Compl. ¶¶ 84, 88–89.)  These allegations defeat reliance, and are "fatal" to an

21  omissions claim. *Noll*, 2013 WL 2384250, at *4.

22  In the end, Plaintiffs reveal that they seek restitution for those customers who would now

23  "rather switch" to another product. (Comp. ¶ 140.)  But that is not the test for a valid fraudulent

24

25  _____

[12] Both Halpain and McGlynn allege that they purchased a one-year subscription to Creative Cloud.
26  (Compl. ¶¶ 83, 90.)  The Subscription Terms state the following with respect to cancellation of 12-
month individual plans: "We'd hate to see you go, but if you cancel within the first 30 days, we'll
27  give you a full refund. Otherwise, you'll be billed 50% of your remaining contract obligation. If
you ever need to cancel, just call Customer Support." Neither Plaintiff alleges that she incurred any
28  cancellation fee, which would have been half as expensive as continuing the contract.

NOTICE OF MOTION AND MOTION AND MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
AMENDED CONSOLIDATED COMPLAINT, CASE NO. 5:13-CV-05226-LHK

1    omissions claim under the UCL.  Plaintiffs must allege both an actionable omission and that they

2    relied on that omission, yet Plaintiffs have alleged neither.  The claim should be dismissed.

3        **C.    Halpain and McGlynn Fail To State an "Unfair" Claim Under the UCL.**

4        In support of their allegations that Adobe's conduct was "unfair," Halpain and McGlynn

5    make the conclusory allegation that "Adobe's conduct is unethical, unscrupulous, and substantially

6    injurious to the Restitution Class."  (Compl. ¶ 138.)  This allegation is precisely the type of "labels

7    and conclusions" and "formulaic recitation[s] of the elements of a cause of action" that the Supreme

8    Court held "will not do."  *Twombly*, 550 U.S. at 555.

9        Plaintiffs also contend Adobe's conduct "undermines California public policy" as reflected

10   in the OPPA, the IPA, and the Data Breach Notification Act.  As discussed above in Section III.C,

11   Plaintiffs have not alleged an actual violation of the cited statutes.  Plaintiffs' allegations amount to

12   nothing but "cursorily listing the same string of statutes as were associated with the 'unlawful'

13   prong and alleging vaguely that [Defendant's] conduct offends public policy . . . and violates the

14   laws stated."  *Hodges v. Apple, Inc.*, No. 13-cv-01128-WHO, 2013 WL 4393545, at *5, *6 (N.D.

15   Cal. Aug. 12, 2013) (quotation and citation omitted).  Thus, Plaintiffs have not offered detailed *facts*

16   showing "that [Adobe] violated some public policy or that any harm to [Plaintiffs] outweighs the

17   utility of [Adobe's] conduct."  *Id.* at *5.  This "necessitates dismissal" of Plaintiffs' allegations

18   under the UCL's "unfair" prong.  *Id.*

19                                    **CONCLUSION**

20       Plaintiffs' hope that they would identify a viable claim has not come to pass.  Adobe

21   respectfully submits that the Complaint should be dismissed with prejudice.

22                                         Respectfully submitted,

23   Dated:  May 21, 2014                    ARNOLD & PORTER LLP

24                                   By:   /s/ Kenneth L. Chernof
25                                         Kenneth L. Chernof (SBN 156187)
                                           Ronald D. Lee (SBN 156025)
26                                         Tracy T. Lane (SBN 184666)
                                           Rachel L. Chanin (SBN 229253)
27                                         *Attorneys for Defendant Adobe Systems*
                                           *Incorporated*

28

NOTICE OF MOTION AND MOTION AND MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
AMENDED CONSOLIDATED COMPLAINT, CASE NO. 5:13-CV-05226-LHK